UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 16-CV-00787 RGK (JCx) | Date | April 11, 2016 |
|---|---|---|---|
| Title | *Lurie v. Konica Minolta Business Solutions U.S.A., et. al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (Not Present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) Order re: Plaintiff's Motion to Remand (DE 14)**

## I. INTRODUCTION

On December 31, 2015, James Lurie ("Plaintiff") filed a Complaint in state court against Konica Minolta Business Solutions U.S.A. ("KMBS"), Konica Minolta Business Solutions, Darrell Rideaux, Mike Chase, Ben Dipane, Tom Devico, and Does 1 through 100 (collectively, "Defendants"). Plaintiff alleges the following actions in connection with the termination of his employment: (1) Discrimination on the Basis of Age in Violation of FEHA; (2) Harassment on the Basis of Age in Violation of FEHA; (3) Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Age in Violation of Feha; (4) Discrimination on the Basis of Disability in Violation of FEHA; (5) Harassment on the Basis of Disability in Violation of FEHA; (6) Retaliation for Complaining of Discrimination and/or Harassment on the Basis of Disability in Violation of FEHA; (7) Discrimination on the Basis of Taking CFRA Leave in Violation of FEHA; (8) Harassment on the Basis of Taking CFRA Leave in Violation of FEHA; (9) Retaliation for Taking CFRA Leave in Violation of FEHA; (10) Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; (11) Breach of Implied-in-Fact Contract not to Terminate Employment Without Good Cause; (12) False Imprisonment; (13) Negligent Hiring, Supervision, and Retention; (14) Wrongful Termination of Employment in Violation of Public Policy; and (15) Intentional Infliction of Emotional Distress ("IIED").

On March 14, 2016, the Court dismissed Claims Two, Five, Eight, Eleven, and Twelve against KMBS. (Order re Mot. To Dismiss 5-6, ECF No. 16.) The Court also dismissed Claim Thirteen against KMBS except to the extent the Claim is based on discrimination. (Order re Mot. To Dismiss 5-6, ECF No. 16.)

Presently before the Court is Plaintiff's Motion to Remand. For the following reasons, the Motion is **DENIED**.

## II.      STATEMENT OF FACTS

The following facts are alleged in the Complaint.

Plaintiff was a 55-year-old systems engineer employed by KMBS starting in May 2012. In November 2012, KMBS hired Defendant Rideaux as branch manager, who served as one of Plaintiff's supervisors. Rideaux began criticizing Plaintiff unwarrantedly. On April 9, 2013, Rideaux called Plaintiff into his office and gave him an inflammatory "letter of concern" regarding his performance, which contained inconsistencies. As Plaintiff began to read the allegations, Rideaux locked him inside the office, without a reasonable way to escape, for approximately ten minutes. After Plaintiff complained about false imprisonment, Plaintiff and Rideaux subsequently met with a human resources representative who told Plaintiff, "Everything is fine," but refused to remove the letter of concern from his file. Rideaux retaliated against Plaintiff for complaining by threatening his job. Even after Plaintiff's complaints, human resources failed to take action in response to this retaliation.

On August 25, 2013, Plaintiff suffered an accident. He experienced ringing in his ear and vertigo. After informing Rideaux, Plaintiff took disability leave from September 2013 to November 11, 2013. Before Plaintiff went on leave, Rideaux wrote up Plaintiff again after learning of Plaintiff's medical disability.

When Plaintiff returned to work, KMBS transferred him from the Los Angeles location to the Gardena location. Plaintiff's new supervisors were Defendants Devico, Dipane, and Chase. Plaintiff continued suffering from increasing medical issues and vertigo episodes. Plaintiff discussed his condition with Devico, who stated he had vertigo and there was nothing doctors could do about it. Plaintiff began missing more work for medical appointments.

When Plaintiff was transferred to Gardena, Chase told him he was not allowed to use the demo room – a room he frequently used at the Los Angeles location to conduct presentations. Plaintiff was surprised when Chase then told him, "We are running out of paper; why isn't there paper in the demo room?" Plaintiff responded, "You told me not to go in there."

On June 18, 2014, Plaintiff sent an e-mail to Chase and Dipane requesting that Chase list exactly what he wanted Plaintiff to do because his accident affected his memory. In that email, Plaintiff also stated he was working to fix the problem, but he would soon need time off for further medical treatment and/or surgery.

On June 27, 2014, Defendants Devico and Dipane terminated Plaintiff's employment.

## III.     JUDICIAL STANDARD

A defendant may remove a case from state court when federal court has original jurisdiction. 28 U.S.C. § 1441(a). Federal courts must "strictly construe the removal statue against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The strong presumption against removal jurisdiction places the burden on the defendant to show by a preponderance of the evidence that removal is proper. *Id*. at 566-67.

## VI.  DISCUSSION

### A.  Complete Diversity Exists

By disregarding the "sham" Defendants named in the Complaint, federal jurisdiction exists based on complete diversity. Plaintiff is a citizen of California. Plaintiff's Complaint expressly alleges that he is a "resident" of California, that he worked at 800 South Figueroa Street in Los Angeles, and that in November 2013, he transferred to KMBS' office in Gardena, California. (Complaint ¶1, 2, and 11.g, ECF No. 1.) KMBS is a New York Corporation whose principal place of business is in New Jersey. Defendant Konica Minolta Business Solutions is a non-existent corporate entity. Therefore, the Court disregards this fictitious entity in determining diversity. Defendants Rideaux, Chase, Dipane, and Devico (collectively, "Individual Defendants") are California citizens. Thus, only the Individual Defendants are not diverse.

Defendants argue that the joinder of the Individual Defendants is fraudulent or a sham because Plaintiff has failed to state any claims against them. The Court agrees. "[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchy v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Joinder of a non-diverse defendant is fraudulent if the failure of a plaintiff to state a cause of action against that defendant is obvious according to the settled rules of the state. *See McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1988). When fraudulent joinder is an issue, "the Court may look beyond the pleadings." *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156,1159 (citing *Ritchy*, 139 F.3d at 1318).

The Complaint only alleges four claims against the Individual Defendants: three harassment claims and one intentional infliction of emotional distress claim. The remaining claims are only alleged against KMBS, who is diverse.

#### 1.  *Plaintiff's Harassment Claims*

The Court previously found Plaintiff failed to state a claim for harassment against KMBS. (Order re Mot. To Dismiss 5-6, ECF No. 16.) The Court's reasoning remains the same. Claims Two, Five, and Eight fail to allege sufficient facts rising to the level of severe harassment required to properly state a claim for harassment in violation of FEHA.

FEHA makes it unlawful for an employer to harass an employee based on age and disability. Cal. Gov. Code §12940. The elements of harassment based on age, disability, or taking CFRA leave under FEHA are: "(1) plaintiff belongs to a protected group; (2) plaintiff was subject to unwelcome [] harassment; (3) the harassment complained of was based on [age, disability, or taking CFRA leave]; (4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) respondeat superior." *Fisher v. San Pedra Peninsula Hospital*, 262 Cal. Rptr. 842, 851 (Ct. App. 1989). To constitute "sufficiently pervasive," the "acts of harassment cannot be occasional, isolated, sporadic, or trivial, rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Fisher*, 262 Cal. Rptr. at 852. Further, severity and pervasiveness is evaluated in light of the totality of the circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hope v. California Youth Authority*, 36 Cal. Rptr. 3d 154, 163 (Ct. App. 2005) (internal quotations and citation omitted).

Plaintiff alleges the following acts constitute harassment: (1) Rideaux giving Plaintiff two letters of concern; (2) Rideaux locking him inside of an office to read the letters of concern; (3) Rideaux

threatening his job; (4) Chase asking Plaintiff why there was no paper in the demo room despite knowing Plaintiff was not allowed in that room; and (5) Dipane and DeVico terminating Plaintiff after learning of his need for medical leave. (Compl. ¶11-12, ECF No. 1.) These facts do not demonstrate conduct that is of a repeated nature. Rather, the alleged acts seem to be isolated and sporadic. Moreover, Plaintiff fails to allege these acts were severe and sufficiently pervasive in nature. Plaintiff fails to connect how the acts are related to Plaintiff's age or disability. More importantly, however, the Complaint lacks facts of how the acts interfered with Plaintiff's work performance, or whether the acts were physically threatening or humiliating. Based on the facts alleged, even construed in the light most favorable to the nonmoving party, the acts constitute no more than mere offensive utterances.

The Court does not believe Plaintiff can amend his Complaint to allege facts that rise to the level of severity and pervasiveness required to state a claim for harassment. As such, Plaintiff's harassment claims have no legal basis against any of the Individual Defendants.

### 2. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

Plaintiff's IIED Claim has no legal basis against the Individual Defendants. First, Plaintiff's IIED Claim against Rideaux is barred by the applicable two-year statute of limitations. Cal. Civ. Proc. § 335.1. The Complaint alleges that Rideaux supervised Plaintiff until November 2013, at which time Plaintiff was transferred to the Gardena location. The Complaint does not allege further actions by Rideaux after this date. Plaintiff filed the Complaint in December 2015, more than two years after Rideaux's conduct suspended. As such, Rideaux is a sham defendant.

Plaintiff has no IIED claim against the remaining Individual Defendants because supervisors and managers may not be held personally liable for making personnel decisions, even if the conduct is deemed discriminatory. To maintain a claim for IIED, Plaintiff must plead "outrageous conduct beyond the bounds of human decency." *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 756 (Cal. Ct. App. 1996) (citing *Cole v. Fair Oaks Fire Protection Dist.*, 729 P.2d 743 (Cal. 1987)). "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*

Plaintiff's allegations concerning the Individual Defendants relate only to their personnel decisions, specifically allegations that (1) Chase reprimanded Plaintiff regarding the demo room; (2) Devico telling Plaintiff there was nothing he could do about Plaintiff's vertigo; and (3) both Dipane and Devico terminating Plaintiff's employment. All of these allegations are related to their personnel decisions. Further, these allegations do not rise to the level of outrageous conduct required to have a legal basis for an IIED claim. As such, there no legal basis for an IIED claim against the Individual Defendants.

### B. The Amount in Controversy Exceeds $75,000

KMBS sufficiently demonstrates that the amount in controversy exceeds $75,000. Even if the punitive and emotional distress damages are indefinite and vague, as Plaintiff argues, KMBS properly demonstrates that Plaintiff's claim for lost earnings would equal no less than $94,676.40 – exceeding the $75,000 threshold. Plaintiff's annual salary was $54,100.80, equating to $4,508.40 per month. (McVeigh Decl. ¶ 4, Ex. C to Notice of Removal, ECF No. 1-3.) Plaintiff's termination occurred twenty-one months ago, in June 2014. A monthly salary of $4,508.40 multiplied by twenty-one months equals $94,676.40. Plaintiff offers no facts disputing this salary amount nor does Plaintiff offer facts indicating he seeks a lower amount. Thus, the amount in controversy exceeds $75,000.

The Court declines to grant Plaintiff attorney's fees in connection with this Motion because this Motion is **DENIED**.

## VI. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand.

**IT IS SO ORDERED.**

**:**

**Initials of Preparer**